NO. 07-07-0061-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



OCTOBER 18, 2007



______________________________




TEXAS WINDSTORM INSURANCE ASSOCIATION,



 Appellant


v.



RENETTA POOLE & WALTER POOLE,



 Appellees


_________________________________



FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY;



NO. D-1-GN-06-003747; HON. STEPHEN YELENOSKY, PRESIDING






On Abatement and Remand


_______________________________



Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

 Pending before the court is an appeal from an "Order Granting Defendant's Plea to
the Jurisdiction," signed on November 17, 2006. The order, however, did not include any
language expressly adjudicating the rights involved or specifically dismissing the suit. 

 In Chandler v. Reder, 635 S.W.2d 895 (Tex. App.-Amarillo 1982, no writ), and
Disco Machine of Liberal Co. v. Payton, 900 S.W.2d 71 (Tex. App.-Amarillo 1995, writ
denied), we had occasion to consider summary judgments which lacked the language
necessary to make the order final and appealable. In Disco, we noted that declarations
by the trial court that the summary judgment was granted were "nothing more than an
indication of the trial court's decision vis-a-vis the motion[] for summary judgment." Disco
Machine of Liberal Co. v. Payton, 900 S.W.2d at 74. They do "not express a specific
settlement of rights between the parties" or "disclose the specific and final result officially
condoned by and recognized under the law." Id. at 74. Thus, such orders were not final
because they did not adjudicate the rights involved or evince a final result recognized by
the law.

 Here, we have an order granting one party's plea to the jurisdiction. Yet, without the
decretal language expressly adjudicating the rights involved, the order is not a final
judgment. Nonetheless, it is rather clear that the trial court intended for the dispute to be
ended through dismissal. Given this situation, rule of procedure allows us to grant the trial
court opportunity to modify the order from which appeal was taken to make it final. Tex.
R. App. P. 27.2 (stating that the appellate court may allow an appealed order that is not
final to be modified so as to be made final and may allow the modified order and all
proceedings relating to it to be included in a supplemental record).

 Accordingly, we abate the appeal and remand the cause to the trial court. Upon
remand, the trial court is ordered to modify the November 17, 2006 "Order Granting
Defendant's Plea to the Jurisdiction" in a manner rendering it a final, appealable order. 
Finally, the trial court is directed to include the modified judgment or order it may execute
in a supplemental record to be filed with the clerk of this court on or before November 16,
2007.

 Per Curiam



 actor is physically
present at the commission of the offense and encourages the commission by words or
other agreement. Burdine v. State, 719 S.W.2d 309, 315 (Tex.Crim.App. 1986), cert.
denied, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987). In making that
determination, the court may examine the events before, during, and after the commission
of the offense and rely on actions of the defendant, which show an understanding and
common design to commit the offense. Id. Participation in an offense may be inferred
from the circumstances. Beardsley v. State, 738 S.W.2d 681, 684 (Tex.Crim.App. 1987).

 Police Officer Vicky Bordelon of the Beaumont Police Department responded to a
call on September 6, 2000, with respect to an altercation near the Plymouth Village
Apartments. She was flagged down by the victim's mother and brother, who took the
officer to their home. There she found the victim, Derrick Eaglin, on a bed covered in
blood. She called EMS, and later talked to a witness, Joseph Hillocks, who named a man
known as Fifth Ward as a participant. 

 Derrick testified that he went to the Plymouth Village Apartments after school on the
day of the assault to give Josh Green a ride to an interview at the Beaumont Country Club
where Derrick worked. Derrick was sitting in the car and Eric Wilson walked up and
swung at him, but missed. Derrick then got out of the car to fight with Eric. Appellant, who
goes by the name of Fifth Ward, was also there, and Derrick testified that appellant told
him "it was going to be a one-on-one fight." Derrick stated that before he and Eric actually
hit each other, he looked to the side and appellant struck him with his hand, after which
Derrick passed out. He woke up in a ditch, and Josh helped him out. However, appellant
knocked him back into the ditch and then went through his pockets and asked for money. 
Josh helped him out again, and Joseph Hillocks drove him home. As a result of the
incident, he had double vision, was in a lot of pain, and could not bite down. His nose was
also broken, and he had surgery to have a plate put under his eye. 

 On cross-examination, Derrick admitted that in the statement he gave to police, he
did not name appellant as his assailant. He merely stated that he was hit in the back of
his head and blacked out. He also failed to mention appellant's alleged remark that it
would be a one-on-one fight or that appellant had knocked him into a ditch. Further, in
response to a question, he seemed to admit that he really did not know who hit him that
day. However, on redirect, he stated that more than one person jumped on him and that
appellant was one of them. Also, he lost several gold teeth and his cell phone during the
incident. He later called his cell phone number and someone who identified himself as
Fifth Ward answered. 

 Josh Green testified that when Derrick drove up, Eric and Derrick got into a fight. 
He later pulled a man named Alkin Savoy off of Derrick in the ditch. Savoy hit Derrick at
least once on the side of the head. After Derrick got pulled out of the ditch, he indicated
he wanted to swing at appellant, and appellant hit him on his chin. However, in Josh's
statement to police, he said that appellant hit Derrick in the nose. 

 Shawn Eaglin, Derrick's mother, testified that Derrick's nose was broken, his sinus
cavities crushed, and he had to have a plate put in his head as a result of the fight. The
doctors thought Derrick would lose his right eye at one point. The medical bills resulting
from his injuries totaled $30,000. 

 Detective Brian Skinner testified that he investigated the incident and, as a result,
charges were filed against Alkin Savoy, Eric Wilson, and appellant. 

 Appellant contends that Derrick's statement made to police contradicted his
testimony at trial because he never identified appellant to police and neglected to mention
other facts that he testified to at trial. Further, appellant argues, Derrick admitted that his
memory was better at the time of his statement than at trial. Moreover, the testimony of
Josh Green only corroborates that appellant struck Derrick once on the chin after Derrick
threatened to hit him. Additionally, appellant posits, no evidence was presented that he
solicited, encouraged, directed, aided, or attempted to aid the other alleged perpetrators,
Eric Wilson and Alkin Savoy, in the commission of the offense, and there was no
connection and acquaintanceship shown between these persons.

 Appellant requested and received an instruction to the jury on the lesser offense of
assault and on self-defense, which the jury obviously rejected. While the testimony of the
victim at trial may have conflicted with his statement to police, those conflicts were for the
jury to resolve. If the testimony of the victim was believed, Wilson commenced the
altercation at which appellant was present, appellant hit the victim with his fist after telling
him it would only be a one-on-one fight, and appellant later struck the victim again. 
Appellant also went through the victim's pockets and asked for money. During this same
time period, there was testimony that Savoy struck the victim as well. Further, there was
evidence of the loss of personal property and that the victim suffered serious bodily injury
as a result of the altercation. Viewing the evidence in the light most favorable to the
prosecution, a rational trier of fact could have found that appellant, acting alone or in
concert, committed the essential elements of the offense beyond a reasonable doubt, and
that verdict is not so against the weight of all of the evidence as to be clearly wrong and
unjust. 

 Accordingly, we overrule appellant's issues and affirm the judgment of the trial
court.


 John T. Boyd

 Senior Justice


Do not publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2002).